# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:21-CR-00184-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) **ORDER** |
| KHEUNGKHAM VONGPHAKDY, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Motions to Dismiss (Doc. No. 16 and 17) (the "Motions"). For the reasons discussed below, the Court will **DENY** both of the Motions.

## I. RELEVANT BACKGROUND

On July 13, 2011, Mr. Vongphakdy appeared for an interview and applied for naturalization on form N-400 in which he certified that he had not committed a crime or offense for which he had not been arrested. (Doc. No. 16-1). At the conclusion of the interview, he signed the application for naturalization in the presence of a U.S. Citizenship and Immigration Services ("USCIS") officer and swore under penalty of perjury that the contents of his application were true and correct. (Doc. No. 1). On the same day, the USCIS approved the application for naturalization. (Doc. No. 16-1). After approval of his naturalization application, Mr. Vongphakdy was notified to appear at an August 3, 2011 naturalization ceremony. (Doc. No. 16-2). On August 3, 2011, Mr. Vongphakdy participated in the naturalization ceremony and was granted a Certificate of Naturalization. (Doc. No. 1).

1

On November 6, 2013, Mr. Vongphakdy was arrested for child sex offenses alleged to have occurred in 2008 and 2009. On that same date, Mr. Vongphakdy reportedly told officers that he had touched a child's vaginal area outside of the child's clothing. The State of North Carolina subsequently charged him with two counts of a second-degree sex offense with a child. (Doc. No. 16-3). On April 2, 2014, Mr. Vongphakdy pled guilty in state court to the charged conduct in violation of North Carolina General Statute § 14-27.5. He was then sentenced to a term of imprisonment of between 116 and 158 months for these convictions.

In October 2019, U.S. Immigration and Customs Enforcement ("ICE") began Operation False Haven, a law enforcement initiative targeting persons who became naturalized citizens after fraudulently procuring citizenship and committed serious felonies. On July 20, 2021, the United States charged that on or about August 3, 2011, Mr. Vongphakdy "knowingly procured, contrary to law, his naturalization and United States citizenship, that is, in his Application for Naturalization (N-400) to become a United States citizen, he provided false and fraudulent information as to material facts about his criminal history by falsely representing that he had not committed a crime or offense for which he was not arrested" in violation of 18 U.S.C. § 1425(a). (Doc. No. 1).

## II. DISCUSSION
### a. Motion to Dismiss Indictment due to Statute of Limitations (Doc. No. 16)

Mr. Vongphakdy moves to dismiss the indictment against him due to the expiration of the statute of limitations. (Doc. No. 16). The Supreme Court has held that the "purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970). The "limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by

2

the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 114-115. Additionally, "a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id.* at 115. The government bears the burden of proving that it indicted the defendant within the appropriate limitations period. *See Smith v. United States,* 568 U.S. 106, 113 (2013).

Mr. Vongphakdy argues the indictment should be dismissed because it fails to allege an illegal act within the appropriate limitations period. The statute of limitations for a § 1425(a) offense is ten years. *See* 18 U.S.C. § 3291. Mr. Vongphakdy argues his charged crime of unlawfully procuring naturalization was completed on July 13, 2011, when he submitted his N-400 application for the purpose of procuring naturalization and when that application was approved. (Doc. No. 16). Mr. Vongphakdy contends the only illegal act that contributed to obtaining citizenship was his submission of allegedly false and fraudulent information as to material facts about his criminal history in his application for naturalization. (Doc. No. 1 and 16). Therefore, the statute of limitations began to run on July 13, 2011 and accordingly, the statute of limitations expired ten years later on July 13, 2021. However, the statute of limitations did not begin to run on July 13, 2011 but began on August 3, 2011 when Mr. Vongphakdy obtained citizenship.

The naturalization ceremony establishes the beginning of the statute of limitations for 18 U.S.C. § 1425(a) prosecutions because, under the fundamental principles of criminal law, "[t]he statute of limitations begins to run when a crime is complete, that is, when each element of the crime charged has occurred." *Toussie,* 397 U.S. at 115. 18 U.S.C. § 1425(a) reads, in pertinent part, that "(a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship

3

. . ..." violates this criminal provision. The United States establishes an 18 U.S.C. § 1425(a) violation occurred by showing: (1) the defendant did or attempted to procure citizenship or naturalization; (2) knowingly; and (3) contrary to law. Because Mr. Vongphakdy is charged with unlawful procurement of naturalization, all elements of the crime were not satisfied until August 3, 2011, when Mr. Vongphakdy actually obtained his citizenship through naturalization. *See United States v. Swetz*, 2019 WL 545005, *2 (D.Nev. 2019) ("The alleged crime [] of naturalization fraud . . . [was] not complete until [the defendant] received the benefit sought by her fraudulent application [], that is, she was naturalized . . ..").

Two courts have addressed the issue raised by Mr. Vongphakdy's motion, and both courts determined that the date of the naturalization ceremony started the statute of limitations clock. In *United States v. Szilvagyi*, 417 Fed.Appx. 472 (6th Cir. 2011), the Sixth Circuit concluded that the statute of limitations began to run on the date the defendant took the oath of citizenship. *Id.* at 476. The *Szilvagyi* court reasoned "the crime was not completed until [the defendant] actually obtained citizenship . . .." and that "an applicant for naturalization obtains United States citizenship only after taking an oath of allegiance before a federal judge." *Id.; see* 8 U.S.C. § 1448(a) ("A person who has applied for naturalization shall, in order to be and before being admitted to citizenship, take in a public ceremony before the court . . . an oath . . ..."). Mr. Vongphakdy contends *Szilvagyi* is inapposite to his case because unlike *Szilvagyi* the indictment does not allege that any false statements were made at the naturalization ceremony. (Doc. No. 24). This is a misreading of *Szilvagyi*. Although the defendant in *Szilvagyi* made a false statement on the day of her naturalization ceremony, the Sixth Circuit analysis was not premised on the date of the false statement. Instead, the premise was that the crime of unlawful procurement of naturalization in violation of § 1425(a) was not completed until the defendant obtained citizenship. *Szilvagyi*, 417

4

Fed.Appx. at 476. Also, in *United States v. Kneginich*, 2017 WL 1959354 (W.D.Mich., May 10, 2017), a district court found that the unlawful procurement of naturalization is not complete until a defendant obtains citizenship by taking an oath of allegiance before a judge. It further noted that the date of the naturalization ceremony is the date on which the statute of limitations begins to run. *Id.* at *1.

In sum, the naturalization ceremony and oath are important aspects of the naturalization process and are the final act by which an alien becomes a citizen of the United States. *See United States v. Knauer*, 328 U.S. 654, 66 S.Ct. 1304 (1946) (the ceremony "is the final act by which an alien acquires the status of citizen."). While Mr. Vongphakdy may have committed other crimes on July 13, 2011, the government indicted him on unlawful procurement of naturalization. (Doc. No. 1). The final act necessary to complete the alleged crime was the actual procurement of citizenship, not the alleged fraudulent statement. This did not take place until he took his oath of allegiance on August 3, 2011. Therefore, because the grand jury returned a true bill of indictment before August 3, 2021, ten years after the statute of limitations began to run, the indictment is timely. Accordingly, the Court will deny Mr. Vongphakdy's motion to dismiss.

### b. Motion to Dismiss Due to Pre-Indictment Delay (Doc. No. 17)

Mr. Vongphakdy also moves to dismiss the indictment against him due to pre-indictment delay. (Doc. No. 17). The Fifth Amendment to the United States Constitution requires dismissal of an indictment where it is shown that the government's pre-indictment delay substantially prejudiced the defendant's right to a fair trial. *United States v. Garcia*, 432 F. App'x 248, 250 (4th Cir. 2011). The Fourth Circuit utilizes a two-part test for determining whether a pre-indictment delay warrants dismissal. *United States v. McCoy*, 129 F. App'x 815, 819 (4th Cir. 2005). First, a defendant must show that he suffered "actual prejudice" from the pre-indictment delay. *Id*.

Prejudice is demonstrated "when the defendant has been 'meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.'" *Id*. The Fourth Circuit has stressed that the burden to show actual prejudice is a heavy one. *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996). Second, if actual prejudice is shown, the court must then balance the demonstrated prejudice against the government's alleged need for the delay. *Howell v. Baker*, 904 F.2d 889, 895 (4th Cir.1990). The inquiry then becomes whether the government's action in prosecuting after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

First, as stated above, Mr. Vongphakdy must show that he suffered actual prejudice because of the pre-indictment delay. *McCoy*, 129 F. App'x at 819. Mr. Vongphakdy contends he suffered actual prejudices that impair his ability to mount an effective defense at trial because 1) he pled guilty to the state criminal charges against him without knowledge of any potential federal charges, 2) he will be subjected to a higher guideline sentence due to his state conviction if convicted, and 3) the government's delays have negatively impacted Mr. Vongphakdy's rehabilitation. (Doc. No. 17). For the reasons discussed below, all three of these "prejudices" fail to meet the heavy burden required to show actual prejudice.

As an initial matter, Mr. Vongphakdy fundamentally misunderstands when the investigation was completed into his alleged unlawful procurement of naturalization. Mr. Vongphakdy essentially argues that the government's case was complete on November 6, 2013, when he allegedly made inculpatory statements to local police and therefore the clock began to "tick" on the delay of his indictment. However, the government need not indict as soon as it has some evidence, or even probable cause. Rather, it is permissible for the government to have waited

6

until Mr. Vongphakdy had pled guilty before instituting a federal investigation into his alleged unlawful naturalization. This is the type of investigative delay that the Supreme Court has held is consistent with Due Process. *See Lovasco*, 431 U.S. at 795-96 ("In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed'. This the Due Process Clause does not require.") (internal citations omitted). Therefore, when determining whether there is actual prejudice this Court will look to the evidence as it would have been after Mr. Vongphakdy's guilty plea in April 2014, not November 2013 as Mr. Vongphakdy argues.

Understanding that the government was not required to indict in November 2013 undermines all three of Mr. Vongphakdy's alleged "prejudices." Mr. Vongphakdy first argues that he was "powerless to exert his own investigative efforts" because the government allegedly concealed its investigation and prosecution for more than seven years. Because of this "concealment" Mr. Vongphakdy was denied federal counsel who could have timely investigated the circumstances surrounding his answers to the application for naturalization, as well as his alleged confession of November 6, 2013. Counsel could also have advised him of the consequences that any state conviction would have on his federal prosecution and future immigration status. According to Defendant, this "prejudice" flows directly from the government waiting to charge him until after his guilty plea. However, as discussed above the government was not required to indict him before he pled guilty to the state criminal charges. Additionally, Mr.

7

Vongphakdy does not even speculate how such an investigation could have assisted him in his defense.

Second, Mr. Vongphakdy argues that the delay resulted in him pleading guilty and now the government can use the conviction at trial and to increase any potential sentencing guidelines. But the argument that Mr. Vongphakdy's criminal history is now elevated, and he is subject to deportation would have been as true the day after his guilty plea as it is today. Moreover, regarding his sentencing, if convicted, Mr. Vongphakdy has the option of seeking a downward departure or variance, and he can request that the Court run all or part of his federal sentence concurrent with the state sentence he is now serving. Lastly, Mr. Vongphakdy argues the delays have caused "oppressive" pretrial incarceration and have negatively impacted his rehabilitation. Mr. Vongphakdy contends he believed he would be able to complete state programs that would aid in his rehabilitation, that he would be released from state custody upon completion of his sentence, and he did not know that his state conviction would lead to his deportation. His incarceration in a federal facility for conduct alleged to have occurred many years ago has disrupted his rehabilitative state programs, has caused him much anxiety, and has "undermine[d] . . .. [his]successful rehabilitation" according to Mr. Vongphakdy. This "negative impact" on Mr. Vongphakdy's rehabilitation, however real it may be, still does not in any way prejudice his ability to mount an effective defense in this case.

If this matter goes to trial, the government's case will likely consist of documents and testimony from persons familiar with the naturalization process. Mr. Vongphakdy has failed to demonstrate any missing witnesses who might testify on his behalf, any missing documents that may be exculpatory, or any evidence that has been lost due to the passage of time. While he states witnesses could have been interviewed at that time to assess the nature and circumstances

surrounding his alleged answers to the application for naturalization, the Fourth Circuit has noted "[v]ague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice stemming from preindictment delay." *Angelone*, 94 F.3d at 909. Furthermore, it appears that no further investigation involving other witnesses or documents is required into the veracity of the statements he made on his application for naturalization and therefore the passage of time has not affected that issue at all.

In sum, Mr. Vongphakdy's relevant arguments of "prejudice" flow from the indictment occurring after the state guilty plea, which would have been as true in April 2014 as they are today. Consequently, Mr. Vongphakdy has failed to show he has been "meaningfully impaired" in his ability to put on an effective defense due to the delay between April 2014 and July 2021. Therefore, he has not met the heavy burden of showing actual prejudice and cannot prevail on his motion.[1]

---

[1] Even if Mr. Vongphakdy met his heavy burden of showing that actual prejudice occurred because of pre-indictment delay, the government's prosecution does not violate "fundamental conceptions of justice" or "the community's sense of fair play and decency." Mr. Vongphakdy has been charged within the statute of limitations, which is the primary safeguard against prejudicial pre-indictment delay. *Betterman v. Montana*, 578 U.S. 437, 136 S.Ct. 1609, 1613 (2013). Additionally, there is no evidence to suggest the government deliberately delayed the prosecution for tactical gain. *Jones*, 94 F.3d at 905. Lastly, given the nature of the evidence against Mr. Vongphakdy, the passage of time has not improved the government's case or detrimentally affected Mr. Vongphakdy's defense. Therefore, notions of justice, fair play and decency are not offended by this prosecution.

**IT IS THEREFORE ORDERED** that the Defendant's Motions to Dismiss (Doc. No. 16 and 17) are **DENIED.**

Signed: December 30, 2021

Kenneth D. Bell
United States District Judge