# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CRIMINAL ACTION NO. 3:21-CR-00184-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) **ORDER**<br>) |
| KHEUNGKHAM VONGPHAKDY, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on Defendant's Motion in Limine to exclude from evidence his prior state convictions in his upcoming trial for Unlawful Procurement of Citizenship or Naturalization under 18 U.S.C. 1425(a). ("Motion") (Doc. No. 34). For the reasons discussed below, the Court will **DENY** the Motion.

## I. RELEVANT BACKGROUND

On July 13, 2011, in connection with his efforts to become a naturalized citizen of the United States, Kheungkham Vongphakdy appeared for an interview and applied for naturalization on form N-400 in which he certified that he had not committed a crime or offense for which he had not been arrested. (Doc. No. 26). At the conclusion of the interview, he signed the application for naturalization in the presence of a U.S. Citizenship and Immigration Services ("USCIS") officer and swore under penalty of perjury that the contents of his application were true and correct. (Doc. No. 1). On the same day, the USCIS approved the application for naturalization. (Doc. No. 26). On August 3, 2011, Mr. Vongphakdy participated in a naturalization ceremony and was granted a Certificate of Naturalization. (Doc. No. 1).

1

On November 6, 2013, Mr. Vongphakdy was arrested for child sex offenses alleged to have occurred in 2008 and 2009. On that same date, Mr. Vongphakdy reportedly told officers that he had touched a child's vaginal area outside of the child's clothing. The State of North Carolina subsequently charged him with two counts of a second-degree sex offense with a child. (Doc. No. 26). On April 2, 2014, Mr. Vongphakdy pled guilty in state court to the charged conduct, which violated North Carolina General Statute § 14-27.5. He was then sentenced to a term of imprisonment of between 116 and 158 months for his admitted crimes.

On July 20, 2021, the United States charged that on or about August 3, 2011, Mr. Vongphakdy "knowingly procured, contrary to law, his naturalization and United States citizenship, that is, in his Application for Naturalization (N-400) to become a United States citizen, he provided false and fraudulent information as to material facts about his criminal history by falsely representing that he had not committed a crime or offense for which he was not arrested" in violation of 18 U.S.C. § 1425(a). (Doc. No. 1).

## II.  DISCUSSION

Defendant now moves to preclude the Government from introducing evidence of his state pleas and convictions at the trial in this action, arguing that they were obtained in violation of his Sixth Amendment Rights. (Doc. No. 34). The Court will deny the Motion for three reasons. First, while filed as a "Motion in Limine," the motion is more properly characterized as a Motion to Suppress and consequently is untimely. Second, this is an improper forum to invalidate or vacate the Defendant's state-court convictions. And third, even if this Court was a proper forum, the Defendant has failed to show his state counsel's performance was constitutionally deficient.

**i. Untimeliness**

2

A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Black's Law Dictionary* (11th ed. 2019). In contrast, a motion to suppress is a "request that the court prohibit the introduction of illegally obtained evidence at a criminal trial." *Id*. While these motions can have similar consequences, they are distinct. *See United States v. Hurst*, 228 F.3d 751, 756 n.1 (6th Cir. 2000) ("A ruling on a motion to suppress, however, is not simply a ruling on an evidentiary objection or a motion in limine based on the Federal Rules of Evidence. A motion to suppress is the mechanism whereby fundamental constitutional rights guaranteed by the [United States Constitution] are protected through enforcement of the judge-made Exclusionary Rule…. [m]otions to suppress normally implicate mixed questions of fact and law, requiring the lower court to make findings of fact and conclusions of law, rather than simply interpreting the Federal Rules of Evidence."). Defendant's motion does not ask for a ruling based on the Federal Rules of Evidence, but on an alleged violation of the Sixth Amendment. Because the substance of the motion, not the title, governs the Court's analysis, this is a motion to suppress. *See United States v. Fígaro-Benjamín*, 392 F. Supp. 3d 280, 282 (D.P.R. 2019) (citing *United States v. Mangine*, 302 F.3d 819, 822 (8th Cir. 2002) ("Mr. Mangine appears to have disguised a late motion to suppress evidence (Mr. Mangine's oral statement) as a motion *in limine*.")).

A district court may set a time for the making of pretrial motions, and failure of a party to raise defenses or objections or to make requests which must be made prior to trial or at the time set by the court shall constitute waiver of the issue. Fed. R. Crim. P.12(c). Pursuant to the Standing Arraignment Order, entered on August 13, 2021 in this case, all "pretrial motions, and accompanying supporting memorandum of law, must be in writing and must be filed within sixty (60) days from the date of this Arraignment Order, or the date on which counsel is appointed or makes a general appearance, whichever occurs last. Motions not timely filed will be summarily

denied." (*See* Doc. No. 6). The date of the Arraignment Order, Defense Counsel's appointment, and Defense Counsel's first general appearance all took place more than sixty days before the filing of this motion. (*See* docket generally). Thus, this motion is untimely.

The Court must ensure the effective and orderly progress of the cases before it. Untimely motions impede the Court's, and the parties', ability to guarantee "the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." *See* Fed. R. Crim. P. 2. Consequently, the motion will be denied as untimely.

### ii. Proper Forum

The Defendant asks this Court to hold that two eight-year-old state-court convictions, for which he has never sought post-conviction relief and from which he has never taken a direct appeal in the state-courts, are unconstitutional. As a threshold issue, this argument tests important principles of federalism.

The Supreme Court has acknowledged the importance of "the relations existing, under our system of government, between the judicial tribunals of the Union and of the States," and that "the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution." *Griffin v. Balt. Police Dep't*, 804 F.3d 692, 698 (4th Cir. 2015) (citing *Ex parte Royall*, 117 U.S. 241, 251, 6 S. Ct. 734, 29 L. Ed. 868 (1886)). Indeed, "the trial of a criminal case in state court" has always been understood "as a decisive and portentous event," *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and one which commands a decent measure of federal respect. *Id*.

In the Habeas corpus context, in the interest of giving state courts the first opportunity to consider alleged constitutional errors concerning a defendant's conviction, a defendant is required

4

to "exhaust" all state court remedies before a federal district court can consider his claims. *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir. 1997) (citing *Rose v. Lundy*, 455 U.S. 509, 518, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982) (noting that "the exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state court proceedings")). This logic is equally persuasive in this context. The Defendant has not pursued his Sixth Amendment argument in the state-courts in the eight-years since his guilty pleas. So, North Carolina's courts have had no opportunity to review or consider the Defendant's arguments. Therefore, if the Court allowed this type of "appeal" to take place in this Court - as opposed to the state courts – it would violate the very structure of our judicial system and the concept of federalism generally. Accordingly, this Court will not entertain an improper collateral attack on the constitutionality of the Defendant's state court convictions and will deny the motion.

### iii. Ineffective Assistance of Counsel

Even assuming that Defendant may challenge his state court convictions in this Court, he has failed to show that his state counsel provided deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984).

The Sixth Amendment of the United States Constitution "recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). A defendant therefore "is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. The Supreme Court has recognized that this right is "the right to the effective assistance of counsel." *Id*. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)). The Sixth Amendment guarantees the

5

right of effective assistance of counsel at "critical stages of a criminal proceeding," including when he enters a guilty plea. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017).

The Supreme Court set forth the standard for ineffective assistance of counsel claims in *Strickland*. To prevail, a defendant must show (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that he suffered prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Under the first prong of the *Strickland* standard, Defendant maintains that his state counsel provided deficient representation when he failed to advise the Defendant that his guilty pleas to state charges carried a risk of denaturalization, which in turn could lead to deportation. (Doc. No. 34). The Defendant argues that *Padilla v. Kentucky*, 559 U.S. 356 (2010) required his state counsel to inform him of the risk of denaturalization and deportation.

In *Padilla,* defense counsel failed to properly advise her non-citizen client that his plea of guilty to drug distribution charges made him subject to automatic deportation under 8 U.S.C. § 1227(a)(2)(B)(i). *See Padilla*, 559 U.S. at 368-369. The court recognized that preserving a defendant's right to remain in the United States may be more important to him than any potential jail sentence and therefore held "[t]he severity of deportation . . . underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id*. at 373–74; *see also United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) (finding deficient performance where counsel "failed to inform Swaby that, under the plea agreement, Swaby would be pleading to an aggravated felony that would render him categorically deportable.").

However, *Padilla* is easily distinguishable from the matter before this Court. Unlike Mr. Padilla, the Defendant was a citizen at the time of his pleas which means he was not subject to

6

automatic deportation. Unlike removal of a non-citizen like Mr. Padilla, which was a mandatory and automatic consequence of his guilty plea, *see* 8 U.S.C. § 1227(a), denaturalization requires the initiation of a suit by the United States and it requires the United States to win that suit. *See United States v. Hatem*, 884 F.3d 318, 329 (6th Cir. 2018) (Bush, dissenting). The distinction between automatic deportation and the mere possibility of denaturalization is substantial. Indeed, any risk of denaturalization and deportation stems from the Defendant's alleged misrepresentations about not having engaged in criminal conduct while procuring naturalization and not as an automatic and direct result of his state-court convictions.

The Defendant also argues that his state counsel should have known that he became a naturalized citizen in 2011, after the occurrence of the alleged child sexual abuse in 2008-2009. The Defendant maintains the questions on N-400 forms are widely available, and all naturalization applications require that the applicant certify whether he had committed a crime for which the applicant was not arrested. (*See* Doc. No. 34). The Supreme Court has noted "immigration law can be complex, and it is a legal specialty of its own." *See Padilla*, 559 U.S. at 369. Courts should be cautious about fashioning rules that would impose on criminal defense counsel the obligation to become expert in other specialties of the law. *See Padilla*, 559 U.S. at 376 (Alito, J., concurring in the judgment) ("Criminal defense attorneys have expertise regarding the conduct of criminal proceedings. They are not expected to possess—and very often do not possess—expertise in other areas of the law, and it is unrealistic to expect them to provide expert advice on matters that lie outside their area of training and experience."). Unlike in *Padilla,* where defense counsel merely had to read the text of the automatic removal statute to discover the consequences of the guilty plea, Defendant's state counsel would have needed to know: (1) when the defendant was naturalized; (2) the application process for naturalization; and (3) the content of the Defendant's

7

naturalization application. This goes beyond the mere reading of a statute as contemplated by *Padilla* and veers into imposing a duty of immigration specialty on the Defendant's state court counsel.

In sum, the Court finds that Defendant's state counsel's representation did not fall below an objective standard of reasonableness when he failed to inform his client, who was a naturalized citizen, that his guilty pleas could potentially create a risk of denaturalization based on his naturalization application and possible deportation if denaturalized.

### III. ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion in Limine, (Doc. No. 34), is **DENIED.**

**SO ORDERED.**

Signed: April 28, 2022

Kenneth D. Bell
United States District Judge