# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:21-CR-00184-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| KHEUNGKHAM VONGPHAKDY, | |
| Defendant. | |

**THIS MATTER** is before the Court on the United States' Motion in Limine that requests various rulings on the admissibility of certain evidence in the upcoming trial on May 2, 2022. (Doc. No. 37). For the reasons discussed below, the Court will **GRANT** the Motion.

## I. RELEVANT BACKGROUND

On July 13, 2011, Mr. Vongphakdy appeared for an interview and applied for naturalization on form N-400 in which he certified that he had not committed a crime or offense for which he had not been arrested. (Doc. No. 26). At the end of the interview, he signed the application for naturalization in the presence of a U.S. Citizenship and Immigration Services ("USCIS") officer and swore under penalty of perjury that the contents of his application were true and correct. (Doc. No. 1). On the same day, the USCIS approved the application for naturalization. (Doc. No. 26). On August 3, 2011, Mr. Vongphakdy participated in the naturalization ceremony and was granted a Certificate of Naturalization. (Doc. No. 1).

On November 6, 2013, Mr. Vongphakdy was arrested for child sex offenses alleged to have occurred in 2008 and 2009. On that same date, Mr. Vongphakdy reportedly told officers that he had touched a child's vaginal area outside the child's clothing. The State of North Carolina

1

subsequently charged him with two counts of a second-degree sex offense with a child. (Doc. No. 26). On April 2, 2014, Mr. Vongphakdy pleaded guilty in state court to the charged conduct in violation of North Carolina General Statute § 14-27.5. He was then sentenced to a term of imprisonment of between 116 and 158 months for these convictions.

On July 20, 2021, the United States charged that on or about August 3, 2011, Mr. Vongphakdy "knowingly procured, contrary to law, his naturalization and United States citizenship, that is, in his Application for Naturalization (N-400) to become a United States citizen, he provided false and fraudulent information as to material facts about his criminal history by falsely representing that he had not committed a crime or offense for which he was not arrested" in violation of 18 U.S.C. § 1425(a). (Doc. No. 1).

## II. DISCUSSION

The United States moves for an order allowing the introduction of certain evidence and precluding the Defendant from making certain arguments during the trial. The United States specifically requests: (1) that Defendant be precluded from admitting evidence of and making argument about the potential consequences or penalties upon conviction;[1] (2) that the United States be allowed to introduce Defendant's notated N-400 Application; and (3) that the United States be allowed to introduce evidence related to Defendant's prior state court conviction for sexual offenses against a minor, and, if necessary, related conduct for which Defendant was charged, but ultimately not convicted. The Court will address each issue in turn.

---

[1] The Defendant has not addressed this issue in its response. (*See* Doc. No. 41). Therefore, the Court will preclude any evidence or argument related to the consequences or penalties of a conviction. *See* Fed. R. Evid. 401; *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should reach its verdict regardless of the sentence that might be imposed); *United States v. Meredith*, 824 F.2d 1418, 1429 (4th Cir. 1987) ("The jury must reach its verdict without considering possible sentences.").

2

### i. Defendant's Notated N-400 Application

The Government intends to introduce Defendant's N-400 (Application for Naturalization) and N-400 Adjudication Processing Worksheet, which are documents related to the naturalization process. These documents contain the Defendant's responses to the questions asked by the United States Citizenship and Immigration Services ("USCIS") adjudicator and other written notations that the adjudicator made during the naturalization interview process. (*See* Doc. No. 37).

The Government argues that the N-400 application is admissible under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8). A public record or statement of a public office is admissible if it, among other things, sets out: (1) "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel," and (2) the party opposing admission "does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)-(B). In *United States v. Santos*, 947 F.3d 711, 725-727 (11th Cir. 2020), the Eleventh Circuit found a notated N-400 application was admissible under Rule 803(8).[2] A N-400 application is observed under a legal duty because applicants for naturalization "must participate in an interview under oath with an USCIS adjudicator to be naturalized" and the adjudicator "reviews the information in the Form N-400 with the applicant, placing a checkmark next to each confirmed answer and noting any corrections using red ink." *Id*. at 726-727. Further, at the end of the interview, every applicant must certify "under penalty of perjury the accuracy of its contents, including the adjudicator's notations

---

[2] The Santos court also found the notated N-400 was admissible under Rule 801(d)(2)(b), an Opposing Party's Statement. Beyond its citation of this authority, the Government does not separately make this argument. However, the Court notes that, as in *Santos*, the Defendant expressly adopted Agent Lewis-Cray's corrections in red ink on the N-400 form by, at the end of the interview, signing Part 13 of the application, swearing or affirming under penalty of perjury that the annotated Form N-400 with those corrections was "true and correct to the best of [his] knowledge and belief." (*See* Doc. No. 34-2 p. 10); *see Santos*, 947 F.3d at 724.

3

in red ink." *Id*. Moreover, as the *Santos* court reasoned, this process is not a "matter observed by law-enforcement personnel" because "USCIS adjudicators routinely complete N-400 forms during the course of their non-adversarial duties of processing applications for naturalization." *Id*. The primary purpose of the N-400 application is thus not to be introduced in criminal proceedings but rather to facilitate the naturalization process. *See Id*. at 727.

Defendant maintains that because he was put under oath and then essentially charged with lying under oath, "the interview itself, at the [USCIS] office, was the scene of the crime, and [Agent Lewis-Cray's] notes were in fact his subjective recordation of his aural observations at the scene of the crime as it took place." However, this argument is unavailing. One of the requirements under Rule 803(8) is that the document was *observed under a legal duty to report*. To hold that because the Defendant was under oath during the interview and when he submitted the N-400 application it does not fall under the public records exception would therefore contradict a specific requirement of the rule. Furthermore, while the Defendant is accused of lying under oath at the interview, he submitted the N-400 application four months earlier, under the penalty of perjury, which contained the allegedly false statement. Consequently, even if Defendant's standard and non-adversarial naturalization interview has subsequently become a "crime scene" because of Defendant's alleged perjury that does not make the N-400 application inadmissible.

The Defendant also argues that *Santos* is distinguishable because the Eleventh Circuit noted "Santos does not contend that he has shown that 'the source of information or other circumstances indicate a lack of trustworthiness' under Rule 803(8)(B)." *Id*. at 725. Defendant says that in contrast he intends to show at trial that "the source of information and circumstances of the application process place into issue his understanding of the immigration questions and the underlying process, and [thus] the hearsay exceptions are not applicable." This argument is

4

unpersuasive. The Defendant bears the burden of establishing unreliability under Rule 803(8). *See Zeus Enterprises, Inc. v. Alphin Aircraft, Inc*., 190 F.3d 238, 241 (4th Cir. 1999) ("The party opposing admission has the burden to establish unreliability"). The Defendant has offered no evidence that the N-400 form is unreliable other than his conclusory statement about what he intends to show at trial. Even accepting the Defendant's claim, his subjective lack of understanding does not call into doubt the reliability of the N-400 application itself but merely goes to whether he knowingly provided false information. Thus, the Court finds that the Defendant's notated N-400 application, assuming that the Government lays a proper foundation, is admissible under Fed. R. Evid. 803(8).

Defendant also opposes the introduction of his N-400 application because the introduction of it would violate Defendant's Sixth Amendment right to confront his accusers. However, this argument is also flawed. The Sixth Amendment of the United States Constitution protects a criminal defendant's right to confront the witnesses against him. U.S. Const. amend VI. In *Crawford v. Washington*, the Supreme Court held that the Sixth Amendment prohibits the introduction of out-of-court *testimonial* statements unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004) (emphasis added).

The Supreme Court has distinguished between nontestimonial and testimonial statements by focusing on "the primary purpose" of the questioning that provoked the out-of-court statement. *See Davis v. Washington*, 547 U.S. 813, 822, 828, 126 S. Ct. 2266, 2273-74, 2277, 165 L. Ed. 2d 224 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances

5

objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). A nontestimonial statement "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 547 U.S. at 821, 126 S. Ct. at 2273.

In *Santos*, the Eleventh Circuit concluded that a notated N-400 application is a "nontestimonial public record produced as a matter of administrative routine." *Santos*, 947 F.3d at 729 (citing *United States v. Phoeun Lang*, 672 F.3d 17, 22 (1st Cir. 2012)). The court held that "the circumstances of the naturalization interview objectively indicate that the primary purpose of the interview is to review the Form N-400 with the applicant and verify the applicant's answers so that a determination can be made as to the applicant's eligibility for naturalization." *Id.* (citing *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273-74). This reasoning is persuasive. The USCIS adjudicators are not conducting these interviews because they suspect the applicants of crimes and are not making the notations on the N-400s applications for later criminal prosecution. *Id*. They are simply engaged in a routine administrative process to assess whether an applicant is eligible for naturalization. Consequently, the Defendant's notated N-400 application is nontestimonial in nature and therefore its admission does not violate the Sixth Amendment.

### ii. Defendant's Criminal History

The Government also intends to introduce evidence of the Defendant's 2014 state convictions for second-degree sex offenses with a child through certified copies of certain court records and, potentially, Defendant's prior admissions. The Government states it may also seek to introduce evidence related to the other criminal charges that were brought against the Defendant arising out of the same investigation, but which were later dismissed as part of his plea agreement. (Doc. No. 37).

18 U.S.C. § 1425(a) prohibits any person from "knowingly procur[ing]... contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." 18 U.S.C. § 1425(a). Contrary to law has been interpreted to mean contrary to the law governing naturalization. *See United States v. Sadig*, 352 F. Supp. 2d 634, 637-638 (W.D.N.C. Jan. 14, 2005) (citing *United States v. Agunbiade*, 172 F.3d 864, 1999 WL 26937, at *2 (4th Cir. Jan. 25, 1999) (unpublished)).

To prove a §1425(a) violation the Government must show: (1) defendant procured United States citizenship through naturalization, (2) defendant committed an illegal act in connection with obtaining naturalization, (3) defendant did so knowingly, and (4) defendant's illegal act "caused" defendant to be naturalized. *See United States v. Habteyes*, 356 F. Supp. 3d 555, 558 (E.D. Va. 2018) (citing *Maslenjak v. United States*, 137 S. Ct. 1918, 1924-26, 198 L. Ed. 2d 460 (2017)). Further, when "the illegal act is a false statement, that means demonstrating that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Maslenjak*, 137 U.S. at 1923.

The Government argues that the Defendant's criminal history is "intrinsic to and probative of two of the essential elements of the Government's claim." (Doc. No. 37). The Government can "establish [the knowingly element] by proof that the Defendant knowingly misstated his criminal record in his written application, or, regardless of any representations to USCIS, knew he was ineligible for naturalization." (Doc. No. 37); *see Sadig*, 352 F. Supp. 2d at 638. The Government maintains that evidence of the Defendant's criminal activity prior to his application for naturalization is needed to establish he knowingly misstated his criminal record.

7

Further, the "requirements of naturalization" provide that no person will be naturalized unless they have met the requirement for continuous residency and physical presence in the United States, and "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well-disposed to the good order and happiness of the United States." 8 U.S.C. § 1427. Offenses "related to criminal sexual conduct or the sexual abuse of a minor are typically considered to be crimes of moral turpitude and render aliens ineligible for naturalization." *See, e.g.*, *United States v. Valenzuela*, 2018 WL 3619503, at *7 (N.D. Ill. July 29, 2018) (unpublished), *aff'd*, 931 F.3d 605 (7th Cir. 2019) (holding, in the context of a civil denaturalization proceeding under § 1451(a), that "[t]he sexual abuse of a minor child—one who is a family member, no less—is undoubtedly depraved and contrary to the accepted rules of morality."); *see also United States v. Escobar*, 735 Fed.Appx. 628, 629-630 (11th Cir. 2018) (unpublished) (finding that the district court did not abuse its discretion by allowing the government to introduce evidence of the defendant's conviction for lewd and lascivious acts against a minor and that this evidence tended to show defendant's knowledge of his unlawful conduct and was probative of defendant's intent and motive to provide knowingly false responses on his naturalization application.). Consequently, evidence of the Defendant's convictions is relevant as to whether he would have met the requirements of naturalization.

The Government also argues that the Defendant's criminal history is admissible under Rule 404(b)(2), which permits the admission of evidence of crimes, wrongs, or other acts for various proper purposes, including, but not limited to, "proving motive, opportunity, intent preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Government maintains it may need to introduce evidence of the circumstances of Defendant's criminal history "to rebut any evidence or refute any argument that the false statement contained in Defendant's N-400

8

Application, or his failure to otherwise disclose his criminal history during the naturalization process was the result of mistake or inadvertence, his failure to recall committing these sexual offenses, or any other innocent reason." (Doc. No. 37).

The Defendant retorts that any evidence of his criminal history is "inadmissible under the Due Process Clause, Sixth Amendment, and the Federal Rules of Evidence." (Doc. No. 41). The Defendant specifically argues that the Government has failed to satisfy Rule 404(b)(2) and more generally the evidence is unreliable and prejudicial due to various constitutional violations and is thus inadmissible.[3] The Defendant's argument fails in two respects.

First, as noted by the Government, evidence of the Defendant's criminal history is plainly relevant to the elements of the charged offense. Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the Defendant's criminal history is not being introduced to prove the Defendant's character and show conformity with that character on a particular occasion. It is being introduced because it is relevant to the elements of the charged offense, 8 U.S.C. 1425(a). Rule 401 states evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether the Defendant had committed a crime when he swore that he had not committed a crime or offense for which he had not been arrested for on his N-400 application will be one of the central issues at trial. And, the Defendant's criminal history goes directly to that issue. While relevant evidence can be excluded if its probative value is substantially outweighed by *unfair* prejudice, it

---

[3] The Court will only address Defendant's arguments under the Rules of Evidence as the other arguments have been addressed in separate and concurrent orders.

9

is not unfairly prejudicial to the Defendant for the Government to introduce evidence of the Defendant's criminal history when it is directly linked to a central issue at trial. *See* Fed. R. Evid. 403.

Second, the Government has satisfied the test for admissibility under Rule 404(b)(2). Although "bad acts" evidence is not admissible to prove criminal propensity, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Fourth Circuit applies a four-step test for determining when evidence of prior acts is admissible under Rule 404(b): (1) "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant"; (2)"[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense"; (3)"[t]he evidence must be reliable"; and (4) "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact-finding process." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017). As noted above, Defendant's criminal history is highly relevant and is probative of an essential element of the charged offense. Additionally, the certified copies of court records from the state proceedings are reliable [4] and the evidence's probative value is not substantially outweighed by the risk of confusion or unfair prejudice. Again, this evidence is of course

---

[4] The Government has represented to the Court that it may introduce evidence and testimony on "other criminal charges" that were dropped under Rule 404(b)(2). *See* Doc. No. 37. Without more information about the specifics of this evidence and testimony the Court cannot determine whether it is reliable or if it is unfairly prejudicial (or if it is hearsay for that matter). Therefore, the Court will allow the Defendant to renew its objection to the admissibility of such evidence if the Government seeks to admit it under Rule 404(b)(2).

"prejudicial" to the Defendant, but it is not unfairly so, and it is of probative value because it goes to the heart of the issues that the jury must decide.

In sum, the Defendant's criminal history is probative and highly relevant to the charged offense, and the Government is not seeking to introduce it for an improper purpose in violation of Rule 404(b)(1) or Rule 404(b)(2).

### III. ORDER

**IT IS THEREFORE ORDERED** that United States' Motion in Limine, (Doc. No. 37), is **GRANTED as set forth above.**

**SO ORDERED.**

Signed: April 28, 2022

Kenneth D. Bell
United States District Judge