**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:21-cr-184-KDB-SCR-1**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KHEUNGKHAM VONGPHAKDY, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM ORDER** |

**THIS MATTER** is before the Court on Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and/or Motion for *Coram Nobis*" [Doc. 93], and on the Government's Motion to Dismiss [Doc. 102].[1]

**I.      BACKGROUND**

The Defendant, who was born in Laos in 1974, became a permanent resident of the United States in 1986. [Doc. 75: Transcript at 32]. The Defendant applied to become a naturalized citizen in 2011. [Id. at 31]. The Defendant completed a form N-400 naturalization application in connection with his efforts to become a naturalized citizen, in which he certified that he had not committed a crime or offense for which he had not been arrested. [Id. at 47; Doc. 102-2: Ex 2 at 8 (N-400 Application)]. The Defendant appeared for a naturalization interview at which answered questions in English, without an interpreter.   [Doc. 75 at 43-44]. The Defendant swore under penalty of perjury that the contents of his application were true and correct. [Doc. 72 at ¶ 9]. He passed a written civics test and English reading and writing tests on his first attempt, without an

---

[1] The Government's Motions to Revoke Naturalization have been stayed pending the outcome of this § 2255/ *coram nobis* proceeding. [Docs. 76, 92; see Doc. 97]. They will be addressed in a separate order.

interpreter or accommodations. [Doc. 75 at 32-33, 40-44; Doc. 102-2: Ex 2 at 14-16]. The application was granted and the Defendant participated in a naturalization ceremony on August 3, 2011. [Doc. 75 at 42].

On November 6, 2013, the Plaintiff was arrested for state sex offenses that were alleged to have occurred in 2008 and 2009. [See Doc. 26 at 2]. That same date, the Defendant reportedly told officers that he had touched a child's vaginal area outside of the child's clothing. He was charged in Mecklenburg County Superior Court with two counts of second-degree sex offense with a child. [Doc. 102-1: Ex 1 at 1-2 (Information, Meck. Case No. 13CRS244645-54)]. On April 2, 2014, the Defendant pleaded guilty to the two violations of North Carolina General Statutes § 14-27.5. [Id. at 3-6 (Transcript of Plea)]. Ten other charges were dismissed. [Doc. 72 at ¶ 32 (Meck. Case Nos. 13CRS244645, -46, -47, -48,-49, -50)]. The plea agreement resulted in a sentence at the bottom of the presumptive guideline range for each offense, consecutive, for a total of 116 to 158 months' imprisonment. [Doc. 102-1 at 7-10 (Judgments)].

In 2021, the Defendant was charged in the instant case with unlawful procurement of naturalization when, on or about August 3, 2011, he "knowingly procured, contrary to law, his naturalization and United States citizenship, that is, in his Application for Naturalization (N-400) to become a United States citizen, he provided false and fraudulent information as to material facts about his criminal history by falsely representing that he had not committed a crime or offense for which he was not arrested" in violation of 18 U.S.C. § 1425(a)." [Doc. 1: Indictment].

Counsel filed a Motion in Limine seeking to exclude introduction of the state pleas and convictions, arguing that state counsel had failed to inform him of the immigration consequences of his plea pursuant to Padilla v. Kentucky, 559 U.S. 356, 367 (2010). [Doc. 34: MIL]. The Defendant also filed a Motion to Suppress, claiming that the statements he had made to law

enforcement officers on November 6, 2013 violated his Fifth Amendment rights. [Doc. 35: Motion to Suppress]. The Court denied relief. [Docs. 52, 54: Orders].

The Defendant proceeded to a jury trial without an interpreter. [See Doc. 75: Trial Tr. at 117]. The parties addressed issues including Defendant's 12th-grade education and his ability to understand English. [See, e.g., id. at 16-17, 42-44, 55-58, 66, 68, 74-75, 89, 130]. A CMPD detective testified that she interviewed the Defendant after his arrest on November 6, 2013 in English, and that he ultimately pleaded guilty to two offenses. [Id. at 66-68]. The prosecutor argued *inter alia* that: the Defendant completed twelfth grade and had no difficulty conversing with the detective in 2013; he had enough English proficiency to pass the naturalization tests on his first try; and he successfully completed the naturalization interview with no interpreter. [Id. at 117-19]. Defense counsel argued that the jury should find that the Defendant did not knowingly lie because: he did not fully understand the question on the citizenship application; English is not his first language; he had not yet been charged in the North Carolina case when he filled out the naturalization application; the interview was rushed; and the relevant question was confusing and was not explained to the Defendant. [Id. at 129, 133, 135-37]. The jury found the Defendant guilty as charged. [Doc. 63: Verdict].

The Presentence Investigation Report ("PSR") scored the Defendant's base offense level as eight for a violation of § 1425(a). [Doc. 72: PSR at ¶ 20]. The Defendant's Mecklenburg County convictions resulted in three criminal history points and a criminal history category of II. [Id. at ¶¶ 32, 34]. The PSR notes that the Defendant graduated from high school in 1994, and he worked consistently until his arrest in positions including machine operator, auto products inspector, forklift driver, and finisher. [Id. at ¶¶ 43-44]. The Defendant "report[ed] no history of mental or

emotional problems….”[2]  [Id. at ¶ 41]. The advisory guideline range was between four and 10 months' imprisonment, and between one and three years of supervised release. [Id. at ¶¶ 50, 53].

The Court sentenced the Defendant within the advisory guideline range to four months' imprisonment, concurrent with an existing state sentence, followed by one year of supervised release. [Doc. 82: Judgment; see Doc. 72: PSR].

The Defendant argued on direct appeal that the Court erred: by admitting evidence that he was able to engage in an English-language interrogation in November 2013 because such was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966); and by denying his motion to suppress the state-court guilty plea because counsel in that proceeding had failed to inform him of the immigration consequences of his plea pursuant to Padilla.  The Fourth Circuit Court of Appeals affirmed. United States v. Vongphakdy, 2023 WL 6638122 (4th Cir. Oct. 12, 2023). It found no Fifth Amendment violation with regards to the Defendant's interrogation because the language spoken during an otherwise privileged communication is not testimonial for purposes of Miranda, and that any error was harmless. It rejected Defendant's suppression claim because a challenge to counsel's effectiveness in a state court proceeding is not cognizable in a federal prosecution. The Supreme Court denied certiorari on February 20, 2024. Vongphakdy v. United States, 144 S.Ct. 871 (2024).

Defendant completed his state and federal incarceration on November 23, 2023, while his certiorari petition was pending. [Doc. 102-4 (DAC Offender Information)]. His federal supervision expired on November 22, 2024.  [Doc. 82 (Judgment); Doc. 102-5 (April 28, 2025 email)].

On February 3, 2025,[3] the Defendant, proceeding *pro se*, filed the instant Petition seeking

---

[2] The Defendant waived a presentence interview.  [See Doc. 72 at pg. 7].

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

relief pursuant to § 2255 and/or *coram nobis*. [Doc. 93]. He presents the following claims *verbatim*:

> (1) State defense counsel violated Padilla v. Kentucky by failing to advise of the immigration and deportation consequences of the guilty plea; the state conviction should be invalidated by the state given that a motion for appropriate relief will be filed in state court; thus, the use of this invalid state conviction in federal court to establish guilty resulted in this unlawful federal conviction.
>
> (2) Federal defense counsel was ineffective for failing to move to invalidate the state conviction obtained in violation of Padilla that was then used to establish guilt in federal court.
>
> (3) Federal defense counsel failed to thoroughly investigate case regarding relevant facts, including corroborating evidence of language deficits and learning issues, that would have provided reasonable doubt as to his guilt at trial.

[Id. at 4-5, 7]. The Defendant requested the appointment of counsel, which was denied. [Docs. 98, 99]. The Government filed a Motion to Dismiss. [Docs. 96, 102]. The Defendant again moved for the appointment of counsel, which was granted. [Docs. 104, 105]. Counsel filed a Response [Doc. 108], and the Government replied [Doc. 111].[4] These matters are now ripe for disposition.

## II.     SECTION 2255 STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## II.     DISCUSSION[5]

---

[4] **The Government's Reply, which counsel certified pursuant to the Court's Standing Order on Artificial Intelligence, includes either a hallucinated quotation to a United States Supreme Court case, or a mis-citation. [Doc. 111 at 2 (quoting Carlisle v. United States, 517 U.S. 416, 429 (1996))]; see 3:24-mc-104 (AI Standing Order); Fed. R. Civ. P. 11. The Court is curious as to which.**

[5] Any subclaim or argument that is not specifically addressed in this section has been considered and rejected.

### A. Motion to Vacate

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress" may move to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255(a). The United States Supreme Court has interpreted the § 2255 "in custody" language as "requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (discussing the "in custody" requirement of 28 U.S.C. § 2254) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)). Once a prisoner's sentence has completely expired, he is not "in custody" notwithstanding any collateral consequences of the sentence, which "are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Maleng, 490 U.S. at 492. The "in custody" requirement is jurisdictional. Id. at 490.

The Government argues that the Defendant is ineligible for § 2255 relief because he is not "in custody," having completed his sentence and term of supervision before filing the instant Motion. [Doc. 102 at 9]. The Defendant concedes in his Response that he "cannot seek relief by using … § 2255 … because he has fully served his sentence and is no longer in custody." [Doc. 108 at 2]. The Motion to Dismiss will, therefore, be granted insofar as the Defendant seeks § 2255 relief, for lack of jurisdiction.

### B. *Coram Nobis*

A *coram nobis* petition is "of the same general character as one under 28 U.S.C. § 2255," but is available to petitioners who are no longer "in custody" and cannot seek habeas relief under § 2255 or § 2241. United States v. Morgan, 346 U.S. 502, 506 n.4 (1954); see 28 U.S.C. § 1651. *Coram nobis* is an "extraordinary remedy" that should be granted only to correct errors "of the most fundamental character" and no other remedy is available. United States v. Lesane, 40 F.4th

191, 197 (4th Cir. 2022) (quoting United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988)). "It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." Morgan, 346 U.S. at 512. A petitioner for *coram nobis* is not entitled to relief unless he can meet his burden to prove: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." United States v. Akinsade, 686 F.3d 248, 252 (4th Cir. 2012) (citation omitted). Whether to grant the writ is ultimately a matter of discretion. Id.

The Defendant has failed to establish that he is entitled to *coram nobis* relief. First, the Defendant has not demonstrated that a more usual remedy is not available. He contends only that §§ 2255 and 2241 relief is unavailable because he is no longer in federal custody. [Doc. 108 at 2]. The record reflects, however, that the Defendant could have sought such relief while he was "in custody" on the federal sentence. The Defendant was aware of the claims regarding his state convictions, the voluntariness of his November 2013 statement, and state counsel's alleged effectiveness no later than April 2022 when counsel filed, and the Court denied, his Motion in Limine and Motion to Suppress; the claims regarding his alleged learning issues, English proficiency, and mental health conditions are personal to him and within his own knowledge. [See Docs. 34, 35, 52, 54]. The Defendant filed the instant § 2255 Motion to Vacate on February 3, 2025, more than two months after his federal supervised release expired. The Defendant could have filed a petition for relief during the pendency of his direct appeal, and he has failed to explain why he failed to do so. See United States v. Sutherland, 103 F.4th 200, 212 n.6 (4th Cir. 2024) (noting that there is no jurisdictional bar to filing a § 2255 petition during the pendency of a direct appeal). The Defendant was still "in custody" serving his term of supervised release when the

7

Supreme Court denied certiorari on February 20, 2024.  See United States v. Pregent, 190 F.3d 279 (4th Cir. 1999) (supervised release is considered to be "in custody" for purposes of a motion to vacate). He fails to explain why he did not file a petition during the more than nine-month period between the denial of certiorari and the expiration of supervised release on November 22, 2024. Because the Defendant could have filed a petition before his federal supervised release expired and chose not to do so, he fails to satisfy the unavailability requirement. See, e.g., Sutherland, 103 F.4th at 212 n.6 (finding that defendant had the opportunity to challenge his conviction earlier by way of a § 2255 petition where he was still in custody when certiorari review was denied "[b]ut, without explanation, he let that opportunity pass him by").

Second, the Defendant has failed to demonstrate that he had a valid reason for failing to file his petition earlier. He relies on: (1) a "mental condition;" (2) the lack of resources in state prison; and (3) ineffective assistance of counsel. [Doc. 108].

As to his "mental condition," the Defendant argues that "evidence suggests that [Defendant] suffers from a mental condition that would have hindered him in pursuing additional post-conviction relief" without substantial assistance from counsel. [Doc. 108 at 3]. In support of this argument, he attaches an offender information printout including 2014 test scores for reading, writing, and math showing that he functions at a fourth, fifth, and ninth grade level, respectively; and a middle school test result from 1989 showing inadequate proficiency with sentence formation, usage, and mechanics. [Docs. 108-2, 108-3]. The Defendant's vague allusion to a "mental condition" and his unsupported reliance on stale, unremarkable test results would not satisfy the § 2255 equitable tolling standard, which, like *coram nobis*, is available only in extraordinary circumstances. See Holland v. Florida, 560 U.S 631, 649 (2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). For instance, a habeas petitioner seeking equitable tolling based on a mental

8

impairment must demonstrate "profound mental incapacity…." <u>United States v. Sosa</u>, 364 F.3d 507, 513 (4th Cir. 2004). The Defendant's present vague and conclusory reliance on an unspecified "mental condition" and stale test results would not warrant equitable tolling, and the Court likewise concludes that such would fall short of the *coram nobis* "valid reasons" standard. <u>See</u> <u>generally</u> <u>Lesane</u>, 40 F.4th at 200–01 (in the context of an actual innocence claim, finding that the habeas corpus timeliness standard should inform the court's analysis in a *coram nobis* proceeding); <u>see, e.g.</u>, <u>Mena v. United States</u>, No. 14-3215, 2014 WL 2208136, at *3 (D.N.J. May 28, 2014) (finding that, where a petitioner was not qualified for equitable tolling, he fails *a fortiori* to meet the Second Circuit's "sound reasons" *coram nobis* test).

The Defendant next addresses the lack of resources while he was incarcerated. He argues that he served his entire sentence in a state facility, where he "lacked access to resources and support necessary for pursuing additional relief outside of the direct appeal…," and that, if he were housed in a federal facility, "he would have had access to resources that could have assisted him in determining whether he had post-conviction claims to pursue in addition to the direct appeal…." [Doc. 108 at 2, 4]. The general lack of prison resources is inadequate to justify the Defendant's failure to file sooner. <u>See, e.g.</u>, <u>Brand v. Dismukes</u>, No. 3:26-cv-24, 2026 WL 1328565 (W.D.N.C. May 13, 2026) (the lack of access to a law library or tablet does not justify equitable tolling) (collecting cases); <u>Henriquez v. United States</u>, No. 5:11-cv-142, 2012 WL 1564158 (E.D.N.C. May 12, 2012) (misplacement of legal papers and limited access to legal materials are not typically grounds for equitable tolling).

The Defendant identifies the final "valid reason" as counsel's failure to advise him of his post-conviction remedies at the conclusion of the appeal. [Doc. 108 at 3-5]. In support, the Defendant has filed a Letter from counsel dated March 5, 2024, stating that the United States

Supreme Court had denied certiorari and discussing anticipated immigration issues, but omitting any mention of potential collateral proceedings. Assuming arguendo that counsel neglected to inform the Defendant about potential avenues of collateral relief, such does not justify his failure to seek relief sooner. The Defendant had no right to post-conviction counsel other than his direct appeal, and accordingly, the Defendant's lack of knowledge about potential collateral challenges to his conviction cannot be attributed to counsel. See Lawrence v. Florida, 549 U.S. 327, 336–37 (2007) (concluding that an attorney's mistake related to the time for seeking federal habeas corpus relief was "not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel"); Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003) ("This circuit has held that a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding. A majority of other circuits agree.") (internal quotation marks and citations omitted). Likewise, the Defendant's own ignorance of the law is insufficient. See Sosa, 364 F.3d at 512 ("even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling").

Moreover, the Defendant was aware of the instant claims at the time of trial and appeal. For instance, the validity of the state convictions and the Defendant's English proficiency were the subject of pre-trial motions in April 2022; Defendant's education, mental health, and ability to understand English were explored at trial and/or at sentencing; the validity of the State court convictions and evidence of Defendant's English proficiency were raised on direct appeal; and in any event, the Defendant's education, language ability, and emotional status are personal to the Defendant. The circumstances upon which the Defendant presently relies present no valid

justification for failing to present these claims sooner.[6] See <u>United States v. Bazuaye</u>, 399 F.App'x 822 (4th Cir. 2010) (denying *coram nobis* where the alleged errors that the defendant discovered while defending against immigration removal proceedings were actually discoverable when he pleaded guilty).

The Defendant has satisfied the third prong of the *coram nobis* test because denaturalization and deportation are adverse consequences of his conviction sufficient to satisfy the case or controversy requirement. [Doc. 108 at 5].

Finally, the Defendant has failed to demonstrate the existence of an error of the most fundamental character.

The Court will examine the Defendant's claims of ineffective assistance of counsel on the merits because ineffective assistance is a type of "fundamental error" that is redressable by a *coram nobis* petition. See <u>United States v. Denedo</u>, 556 U.S. 904, 914 (2009); <u>Lesane</u>, 40 F.4th at 198 ("certain *coram nobis* proceedings that focus on fundamental errors — e.g., ineffective assistance of counsel — may resemble relitigation of a matter that has been adjudicated"); <u>Akinsade</u>, 686 F.3d at 252–53 (to determine whether a claim of ineffective assistance of counsel constitutes an error of the "most fundamental character" requires examination of the merits of the claim to determine whether the defendant has been prejudiced).

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. amend. VI. To show ineffective assistance of counsel, a petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See <u>Strickland</u>, 466 U.S. at 687.

---

[6] Even if the Defendant could demonstrate the existence of a valid reason for failing to seek relief sooner, he nevertheless fails several other prongs of the *coram nobis* inquiry and the Court would deny relief in any event.

11

To establish deficient performance, a petitioner must demonstrate that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Id. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Md. Corr. Adj. Ctr., 970 F.2d 1355, 1357 (4th Cir. 1992). When evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." Id. at 691. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011).

To establish prejudice, a petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). That is, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Fundamental fairness "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). A court need not analyze the sufficiency of counsel's performance if it is clear that the defendant was not prejudiced. See Sutherland, 103

12

F.4th at 208.

The Defendant's first ineffective assistance claim is that state counsel was ineffective for failing to inform Defendant of the immigration consequences of his plea pursuant to Padilla, which invalidated the state conviction and, in turn, rendered the federal conviction unlawful.[7] [Doc. 93 at 4]. A petition for writ of error *coram nobis* "is not a device to relitigate issues fully ventilated at the time of the conviction." Kornse v. United States, No. 1:16-cr-41-MR, 2019 WL 6169808, at *2 (W.D.N.C. Nov. 19, 2019) (quoting United States v. Keane, 852 F.2d 199, 203 (7th Cir. 1988)). The Defendant challenged his state convictions' validity pursuant to Padilla ineffective assistance, and the Fourth Circuit rejected that claim on direct appeal as non-cognizable. See Vongphakdy, 2023 WL 6638122. This previously-rejected, non-cognizable claim cannot constitute fundamental error for purposes of *coram nobis* review.[8] See generally Calvert v. United States, 351 F. App'x 475, 476 (2d Cir. 2009) (holding that speedy trial claim "cannot be relitigated" in *coram nobis* proceeding when claim had already been rejected on direct appeal); see, e.g., Kornse, 2019 WL 6169808 (W.D.N.C. Nov. 19, 2019) (rejecting a *coram nobis* sufficiency of the evidence challenge).

The Defendant's second ineffective assistance claim is that defense counsel failed to file a cognizable challenge to the state convictions, which were used to establish Defendant's violation of § 1425(a). [Doc. 93 at 5]. The Defendant has failed to demonstrate deficient performance or

---

[7] Counsel appears to have abandoned this claim. [See Doc. 108 at 6-12 (addressing only Defendant's other two ineffective assistance claims)]. The Court will address it briefly in an abundance of caution.

[8] The Defendant does not appear to challenge the validity of the state convictions at this time. Any such claim would be dismissed as non-cognizable. See In re Egan, 339 F.App'x 314, 315 (4th Cir. 2009) (unpublished) ("The writ of error *coram nobis* may not be used to set aside a state conviction"); see, e.g., Morrison v. Cooper, 5:20-cv-145, 2020 WL 3579216 (E.D.N.C. May 28, 2020) (dismissing for lack of jurisdiction a state inmate's *coram nobis* petition seeking to vacate his state convictions and to expunge his record). Any challenge to the state convictions must be brought, if at all, in a separate civil action, subject to all timeliness and procedural requirements. See generally 28 U.S.C. § 2254. The Court makes no determinations about the potential merit or procedural viability of such an action.

prejudice.

Reasonable counsel could have concluded that challenging the state court convictions would have been fruitless. Section 1425(a) prohibits any person from "knowingly procur[ing] … contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." The essential elements of this offense are: (1) the defendant procured citizenship through naturalization; (2) the defendant committed an illegal act in connection with obtaining naturalization; (3) the defendant did so knowingly; and (4) the defendant's illegal act "caused" defendant to be naturalized. See United States v. Habteyes, 356 F. Supp. 3d 555, 558 (E.D. Va. 2018) (citing Maslenjak v. United States, 582 U.S. 335, 340-42 (2017)). The Defendant was charged with providing false and fraudulent information regarding his criminal history in his N-400 application, by "falsely representing that he had not committed a crime or offense for which he was not arrested." [Doc. 1 at 2]. The § 1425(a) violation required only a false representation that the Defendant had not committed a crime or offense – no state court conviction was required. A CMPD detective testified at trial that she interviewed the Defendant after his arrest on November 6, 2013, and that he ultimately pleaded guilty to the two charged offenses. [Doc. 75 at 66]. Even if the Defendant's state convictions had been overturned on Padilla grounds, the Government still could have established Defendant's violation of § 1425 via testimony from the detective and/or from the victims and the victims' parents that the Defendant engaged in criminal conduct which he failed to disclose in his naturalization application. [See Doc. 70 at 15 (counsel stating at a pretrial hearing that the victims and their parents would be available for trial)]. Reasonable counsel could have decided to forego that challenge because, even if it were successful, it would not negate any element of the § 1425(a) offense. The Defendant cannot establish prejudice for the same reasons. See Strickland, 466 U.S. at 691 (an error by counsel, even

14

if unreasonable, does not warrant setting aside the criminal proceeding if it had no effect on the judgment).

The Defendant's final ineffective assistance claim is that defense counsel failed to thoroughly investigate the "relevant facts, including corroborating evidence of language deficits and learning issues, that would have provided reasonable doubt as to his guilt at trial." [Doc. 93 at 7].

"Strickland's objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries and to allow adequate time for trial preparation and development of defense strategies." Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998) (citations omitted). "Although 'a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance.'" Huffington, 140 F.3d at 580 (quoting Gray v. Lucas, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982)). "Particularly when evaluating decisions not to investigate further, we must regard counsel's choices with an eye for 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) (quoting Strickland, 466 U.S. at 691).

"An attorney's failure to present available exculpatory evidence is ordinarily deficient, 'unless some cogent tactical or other consideration justified it.'" Griffin, 970 F.2d at 1358 (quoting Washington v. Murray, 952 F.2d 1472, 1476 (4th Cir. 1991)). "Failing to present a witness, however, is neither unreasonable nor prejudicial if that witness would not have led to the admission of exculpatory testimony." Fenn v. United States, 175 F.Supp.3d 602, 609 (E.D.Va. 2016) (citation omitted). In assessing the reasonableness of an attorney's investigation, "a court must consider not

only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). When making the prejudice determination, a court "must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. Furthermore, our legal system "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

The Defendant has not come forward with any evidence that he had a mental health condition which, if investigated and presented by counsel, had a reasonable probability of changing the outcome of trial. The Defendant conducted himself appropriately throughout the trial and denied any mental health concerns in the PSR. His present reliance on an internet article about "Masking," along with his speculative assertion that he may suffer from some undiagnosed affliction that would have provided him with a defense, is insufficient. [See Doc. 93 at 7; Doc. 108 at 7 (Defendant's "mental condition was *the* defense"); Doc. 108-4 (Article)]; see Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (a petitioner must present specific information to show what favorable evidence an investigation would have produced).

As for the Defendant's alleged language deficit and learning issues, the Defendant has likewise failed to carry his burden. At trial, the parties explored the Defendant's English proficiency and education, and his ability to understand the naturalization process, including that the Defendant has lived in the United States since he was 12 years old, graduated high school, passed written civics and English proficiency tests on his first attempt, passed an oral examination, and was interviewed by a detective in 2013 without the need for an interpreter. The PSR includes that information as well as the Defendant's work history. The Defendant's present contentions that he has learning and language difficulties are too vague and conclusory to support relief. See

Beaver, 93 F.3d at 1195.

Nor is there any reasonable probability that the trial outcome would have been different had counsel investigated and presented evidence regarding these issues, especially in light of the evidence that the Defendant was mentally stable and aware, adequately understood English, and had a reasonable educational level when he applied for naturalization. Therefore, even if his attorney had investigated the foregoing issues and presented evidence of the Defendant's limited English proficiency, reading comprehension, and other issues, he has not shown any reasonable probability that result of the proceeding would have been different. Strickland, 466 U.S. at 694.

In sum, the Defendant has failed to show, and the Court cannot conclude, that an alleged failure to investigate any of the foregoing issues so impaired his defense that it constituted ineffective assistance of counsel, see Trombetta, 467 U.S. at 485 (requiring "a meaningful opportunity to present a complete defense"), or that the result of the proceeding was otherwise "fundamentally unfair or unreliable," Lockhart, 506 U.S. at 369. The Court, therefore, will deny this claim.

In sum, the Defendant has not demonstrated that *coram nobis* relief is available and, even if it were available, his claims would fail on the merits. The Government's Motion to Dismiss will be granted and the Petition for *coram nobis* relief will be dismissed and denied.

IV.     CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is granted and the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and/or Motion for *Coram Nobis* is dismissed and denied.

**Counsel for the United States is cautioned to thoroughly review all future filings for accuracy.  [See Note 3, *supra*].  Any future incidents may result in the issuance of a show-**

17

**cause order and the impositions of sanctions.**

   **IT IS, THEREFORE, ORDERED** that:

1. The United States of America's Motion to Dismiss [Doc. 102] is **GRANTED**.

2. The Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and/or Motion for *Coram Nobis* [Doc. 93] is **DISMISSED AND DENIED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

   **IT IS SO ORDERED**.

     Signed: June 17, 2026

     Kenneth D. Bell
     United States District Judge

18